# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **STEFAN HICKEL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:23-cv-00567** |
| | ) | **Judge Aleta A. Trauger** |
| **KEVIN WESTOVER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

Plaintiff Stefan Hickel has brought a lawsuit against Kevin Westover, a police officer with the Clarksville Police Department, asserting claims under 42 U.S.C. § 1983 for (1) the use of excessive force during an arrest and (2) malicious prosecution, false arrest, and false imprisonment. (Complaint, Doc. No. 1.) Now before the court is Westover's Motion to Dismiss (Doc. No. 17), seeking dismissal of the malicious prosecution, false arrest, and false imprisonment claims. In his Response, the plaintiff concedes that his false imprisonment claim is redundant of his false arrest claim and does not oppose dismissal of the false imprisonment claim. (Doc. No. 22, at 1, 8.) He maintains that the malicious prosecution and false arrest claims should proceed. The defendant has filed a Reply (Doc. No. 25) in further support of his Motion to Dismiss.

For the reasons set forth herein, the court will grant the Motion to Dismiss.

## I.  STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Such a motion is properly granted if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020). To survive a

motion to dismiss, a complaint must allege facts that, if accepted as true, are sufficient to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007); *see also* Fed. R. Civ. P. 8(a)(2). A complaint has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). The complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555 (2007). A complaint that "tenders 'naked assertions' devoid of 'further factual enhancement'" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

In ruling on a motion to dismiss under Rule 12(b)(6), the court must "construe the complaint in the light most favorable to the plaintiff, accept all well-pleaded factual allegations in the complaint as true, and draw all reasonable inferences in favor of the plaintiff." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016).

Generally, if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). At the same time, however, it has long been the rule that a court may consider not only the complaint and exhibits attached to it, but also exhibits attached to a defendant's motion to dismiss, "so long as they are referred to in the Complaint and are central to the claims contained therein." *Brent v. Wayne Cty. Dep't of Human Servs.*, 901 F.3d 656, 694 (6th Cir. 2018) (citation omitted). A court may also consider public records without converting a Rule 12(b)(6) motion into a Rule 56 motion. *Jones v. City of Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) (citation omitted).

## II.      FACTS ALLEGED IN THE COMPLAINT

As relevant here, Hickel alleges that Westover, while on duty as a Clarksville Police Officer, pulled him over on June 30, 2022 for allegedly having failed to yield to oncoming traffic when making a left turn in his vehicle. (Compl. ¶ 6.) The encounter was video-recorded on Westover's bodycam and dashcam, and the plaintiff has belatedly filed copies of these videos as exhibits to the Complaint. (Doc. No. 26.)

Upon pulling Hickel over, Westover advised him that he had failed to yield. Although Hickel disputed the contention that he had failed to yield, he was otherwise "fully responsive and cooperative." (Compl. ¶¶ 9, 10.) Westover, however, allegedly became "increasingly aggressive and contentious" during the traffic stop. Rather than simply receiving the plaintiff's license, registration, and insurance card and issuing a traffic ticket, he continued to argue with Hickel about the basis for the traffic stop. (Compl. ¶ 15.) When Hickel responded, continuing to deny that he had failed to yield, Westover ordered him out of the car and then allegedly forcibly pulled Hickel out of his vehicle and slammed him facedown into the driver's seat. (Compl. ¶¶ 16–22.)

Westover then informed Hickel that he was being arrested and cited for resisting arrest. (Compl. ¶ 23.) He placed Hickel in handcuffs and closed them too tightly, causing the plaintiff pain. Hickel advised Westover that he was in pain and that his ribs and wrists were injured, but, rather than offering medical assistance, Westover took Hickel to jail. (Compl. ¶¶ 24–25.) Westover pressed charges against Hickel for resisting arrest, despite the alleged absence of probable cause to do so, and included false statements in his arrest warrant in order to substantiate the arrest, but the Grand Jury ultimately returned a "No True Bill." (Compl. ¶¶ 27–29, 31.)

As set forth above, in addition to a claim for excessive force, the plaintiff asserts claims against Westover for malicious prosecution and false arrest. Specifically in support of the latter claims, Hickel asserts that Westover violated his Fourth Amendment rights not to be prosecuted

or arrested without probable cause, lied under oath that Hickel had resisted arrest, and, by swearing out an arrest warrant that contained false statements, "helped start a prosecution against [Hickel] without probable cause." (Compl. ¶¶ 41–43.)

## III.    CONSIDERATION OF EXHIBITS FILED WITH THE DEFENDANT'S MOTION

The plaintiff did not attach any exhibits to his Complaint, aside from a late-filed thumb drive containing a copy of the bodycam and dashcam videos that depict both the traffic incident that led to the stop and the encounter between Hickel and Westover after the traffic stop. (Doc. No. 26.) The defendant, in connection with his Motion to Dismiss, filed copies of both the Arrest Warrant prepared by Westover and the transcript of the preliminary hearing conducted by the Montgomery County General Sessions Court on September 19, 2022 in *State of Tennessee v. Stefan Hickel*, No. 63GS1-2022-CR-8037. (Doc. Nos. 18-1, 18-2.) Westover argues that the court may consider these documents without converting his motion into one for summary judgment, both because they are the public records of a state court and because they are "integral to the Plaintiff's claims and/or are referenced specifically in the Complaint." (Doc. No. 19, at 4.)

In response, the plaintiff explicitly agrees that "the Court may (and should) consider the arrest warrant affidavit and preliminary hearing transcript" in ruling on the Motion to Dismiss. (Doc. No. 22, at 1.) But he also contends that the court should consider the "No True Bill" issued by the Montgomery County Grand Jury, attached to his Response and referenced in the defendant's Motion to Dismiss. (*See* Doc. No. 22-1.)

The "No True Bill" and the Arrest Warrant are clearly referenced in the Complaint and central to the plaintiff's claims and may be considered without requiring conversion of the defendant's motion. The preliminary hearing transcript, conversely, is not referenced in the Complaint and is not actually central to the plaintiff's claims. However, because the plaintiff does not contest the court's ability to consider it, and because the court "may take judicial notice of

other court proceedings without converting the motion into one for summary judgment, *Buck v. Thomas M. Cooley Law Sch*., 597 F.3d 812, 816 (6th Cir. 2010) (citing *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 576 (6th Cir. 2008)), the court will consider the preliminary hearing transcript. *See also Garton v. Crouch*, No. 3:21-cv-00338, 2022 WL 275519, at *7 (M.D. Tenn. Jan. 28, 2022) (finding a preliminary hearing transcript "to be a document of which the court may take judicial notice under the Federal Rules of Evidence, as the existence of the transcript and its provenance 'can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned' (quoting Fed. R. Evid. 201(b)(2)). To be clear, however, the court "may take judicial notice of another court's opinion not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity." *Winget*, 537 F.3d at 576.

## IV. THE DEFENDANT'S MOTION TO DISMISS

In support of his Motion to Dismiss, Westover argues that the malicious prosecution and false arrest claims are barred in their totality by the doctrine of collateral estoppel. Alternatively, he argues that, because it is clear that the arrest warrant charged the plaintiff with failure to yield as well as resisting arrest, and the plaintiff does not allege a lack of probable cause for the failure to yield charge, he cannot establish a claim for malicious prosecution or false arrest associated with the resisting arrest charge, even assuming that Westover in fact lacked probable cause to arrest and prosecute Hickel for resisting arrest. The court, finding the latter argument to be dispositive, does not reach the issue of collateral estoppel.

### A. Probable Cause

#### 1. *The Parties' Positions*

Westover asserts that it is clear from the face of the Complaint that the plaintiff does not contend that probable cause did not exist for the charge of failure to yield and that, because this

charge was indisputably supported by probable cause, and because the plaintiff does not allege that he "suffered a deprivation of a liberty interest as a result of his prosecution for the charge of resisting stop/arrest that is separate and distinct from any alleged deprivation of a liberty interest that purportedly resulted from his prosecution for the charge of failure to yield," Hickel's false arrest and malicious prosecution claims automatically fail, regardless of whether there was probable cause for the resisting arrest charge. (Doc. No. 19, at 11–12; *see id.* at 8, 10.)

In response, the plaintiff insists that the Complaint does, in fact, allege that the arrest for failure to yield lacked probable cause, pointing to his allegations that he "disputed" Westover's contention that he had failed to yield. (Doc. No. 22, at 5.) Alternatively, he argues that, "even a valid charge for failure to yield would not preclude a Fourth Amendment claim regarding the resisting arrest charge," where the "evidence exists that a defendant intentionally [misled] or intentionally omitted information at a probable cause hearing for an arrest." (*Id.* at 6 (quoting *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 n.4 (6th Cir. 2005).) He claims that this situation is present here: that Westover "falsified the arrest warrants to cover up his excessive force." (*Id.* at 6–7.)

Finally, the plaintiff argues that the "Sixth Circuit has recognized that, although normally '[t]acking on meritless charges . . . does not change the nature of the seizure,' if 'hypothetically it were to change the length of detention, that would be a different issue." (*Id.* at 7 (quoting *Howse v. Hodous*, 953 F.3d 402, 409 n.3 (6th Cir. 2020)).) He argues that he can make such a showing here, based on Tennessee's so-called "cite and release" (or "must cite") statute, Tenn. Code Ann. § 55-10-207(b)(1), which provides that, unless certain exceptions not relevant here apply, "[w]henever a person is arrested for a violation of any provision . . . punishable as a misdemeanor, . . . the arresting officer shall issue a traffic citation to the person in lieu of arrest, continued custody

and the taking of the arrested person before a magistrate." Based on this statute, he asserts that he would not have been taken into custody for failure to yield, a Class C misdemeanor, so the additional charge of resisting arrest, a Class B misdemeanor—which resulted in his being handcuffed, taken to jail, and required to post a $5,000 bail bond—amounted to "a far greater deprivation of liberty than signing for a citation and being allowed to go about his day." (Doc. No. 22, at 8.)

Westover disputes that the Complaint contains any allegations challenging probable cause for the failure to yield charge, any allegations that Westover fabricated facts relating to the failure to yield, or any allegations that the resisting arrest charge resulted in additional conditions being placed on Hickel's release, that Hickel was forced to attend additional court hearings, or that he otherwise suffered any deprivation of liberty specifically related to the resisting arrest charge. The defendant also addresses the impact of the cite and release statute, pointing out that the Supreme Court has held unequivocally that "state restrictions do not alter the Fourth Amendment's protections." (Doc. No. 25, at 8 (quoting *Virginia v. Moore*, 553 U.S. 164, 176 (2008); *United States v. Chol*, No. 3:18-cr-00273, 2019 WL 3531935, at *4 (M.D. Tenn. Aug. 2, 2019) (Richardson, J.)).)

### 2. Discussion

The law is clear that, to state a claim under the Fourth Amendment for false arrest or malicious prosecution, a plaintiff must, at a minimum, establish a lack of probable cause for the arrest or unlawful detention. *See Lester v. Roberts*, 986 F.3d 599, 608 (6th Cir. 2021) ("Those asserting a Fourth Amendment claim against a pretrial detention (or prosecution) must show, at a minimum, that the defendant lacked probable cause."); *Sykes v. Anderson*, 625 F.3d 294 (6th Cir. 2010) (identifying the elements of a § 1983 malicious prosecution as: "(1) a criminal prosecution was initiated against the plaintiff, and the defendant made[,] influenced, or participated in the

decision to prosecute; (2) there was a lack of probable cause for the criminal prosecution; (3) the plaintiff suffered a deprivation of liberty, as understood under Fourth Amendment jurisprudence, apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor"); *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005) ("A false arrest claim under federal law requires a plaintiff to prove that the arresting officer lacked probable cause to arrest the plaintiff.").

As an initial matter, the court finds that the Complaint does not plausibly allege a lack of probable cause to support the failure to yield charge. The Complaint itself contains no allegations pertaining to the validity of the failure to yield charge. Nor is the court persuaded that the plaintiff's allegation that he "disputed" Westover's contention that he had failed to yield (Doc. No. 1 ¶¶ 8, 10) can be construed as alleging that Westover lacked probable cause or fabricated facts relating to that charge. Instead, the plaintiff's allegations in support of the false arrest and malicious prosecution charges are entirely focused on the purportedly unlawful arrest for resisting arrest. (*See, e.g.*, *id.* ¶ 23 ("Defendant Westover informed Plaintiff that he was being arrested and cited for 'Resisting Arrest' even though Plaintiff fully complied with every order that was given to him."); *id.* ¶ 27 ("Defendant Westover pressed charges against Hickel for Resisting Arrest, despite the fact that he never advised Hickel that he had committed a crime or was being arrested."); *id.* ¶ 42 ("Defendant obtained an arrest warrant against Plaintiff for resisting arrest by knowingly and intentionally lying under oath with allegations that Plaintiff had resisted arrest, despite the fact Defendant knew these allegations were false.").) More importantly, even if the Complaint did allege a lack of probable cause, the dashcam video filed by the plaintiff clearly shows the traffic incident from Westover's perspective and affirmatively establishes probable cause (at a minimum) to charge the plaintiff for failure to yield. (*See* Doc. No. 26 (video identified as

2702_Wilma_Rudolph_Blvd-4).) Because the defendant had probable cause to arrest and charge the plaintiff for failure to yield, Hickel's false arrest and malicious prosecution claims in connection with that charge—to the extent the Complaint can be construed to assert such claims— must be dismissed.

In addition, because the arrest and prosecution on the failure to yield charge were supported by probable cause, the plaintiff's claims for false arrest and malicious prosecution in connection with the resisting arrest charge also fail, regardless of whether probable cause existed separately for that charge. *See Howse v. Hodous*, 953 F.3d 402, 408–09 (6th Cir. 2020) ("To begin with, there's enough evidence for a reasonable person to believe that Howse obstructed official business. . . . And because there was probable cause for that charge, Howse cannot move forward with *any* of his malicious-prosecution claims."). As the Sixth Circuit explained in *Howse*:

> Under the Fourth Amendment, an officer can seize someone so long as he has probable cause that the person has violated the law. For example, suppose a police officer clocks someone driving twenty miles per hour over the speed limit. The officer pulls over the driver and offers two reasons for the stop. The first is that he saw the driver speeding. The second is that he suspected that the driver might have illegal drugs. Even if there's nothing to support the officer's hunch about drugs, the officer still has probable cause to stop the car for speeding. So the seizure doesn't violate the Fourth Amendment even though one of the justifications for the stop was meritless.

> That's why the constitutional tort claim of false arrest fails so long as there's just one valid reason for the arrest. A false arrest, as its name suggests, is simply an arrest which isn't supported by probable cause. The Supreme Court has held that the reason the officer gives for an arrest need not be the reason which actually provides probable cause for the arrest. If the facts known to the officers support probable cause in any form, then an individual may lawfully be arrested. So it follows that when an officer arrests someone based on multiple charges, it is not relevant whether probable cause existed with respect to each individual charge. What matters is the validity of the arrest (the seizure) and not the validity of every charge (the potential justifications for the seizure). As long as the arrest is supported by probable cause on one charge, then a false arrest claim cannot move forward.

*Id.* at 409 (internal quotation marks and citations omitted).

Hickel's argument that *Howse* does not apply in this case, because a mere traffic citation would not have given Westover the ability under state law to arrest him and take him into custody has, as Westover argues, also been rejected by the federal courts. In *Virginia v. Moore*, the defendant was pulled over by police officers and arrested for the misdemeanor of driving on a suspended license. 553 U.S. at 167. He was searched incident to that arrest and found to be carrying crack cocaine. It was undisputed that, under state law, he should have been issued a summons instead of being arrested on the suspended license misdemeanor and that police do not ordinarily conduct searches incident to traffic citations. *Id.* When the defendant was charged with possession of cocaine with intent to distribute, he filed a pretrial motion to suppress the evidence obtained during the search incident to the arrest for driving on a suspended license, on the grounds that the arrest violated the Fourth Amendment. The Virginia Supreme Court ultimately agreed with the defendant, finding that, because the arresting officers should have issued a citation under state law instead of arresting the defendant, and "the Fourth Amendment does not permit search incident to a citation, the arrest search violated the Fourth Amendment." *Id.* at 168.

The Supreme Court, however, disagreed. Analyzing the seizure and search "in light of traditional standards of reasonableness" and with reference to its prior decisions in similarly postured cases, the Court found that an arrest based on probable cause satisfies the Fourth Amendment, regardless of whether it is valid under state law. That is, "[a] State is free to prefer one search-and-seizures policy among the range of constitutionally permissible options, but its choice of a more restrictive option does not render the less restrictive ones unreasonable, and hence unconstitutional." *Id.* at 174. And the Court held, unambiguously, "that warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution, and that while States are free to regulate such arrests as they desire, state restrictions do not alter the

Fourth Amendment's protections." *Id.* at 176. It also reiterated that "[a] custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment." *Id.* at 177 (citation omitted); *see also Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) (holding that a warrantless arrest based on probable cause for a fine-only misdemeanor offense was constitutional); *United States v. Jones*, 55 F.4th 496, 500 (6th Cir. 2022) ("The Supreme Court has repeatedly held that the Fourth Amendment permits officers to warrantlessly arrest—that is, to seize—a person if the officer has probable cause to believe that the suspect has committed a misdemeanor in his presence."); *United States v. Chol*, No. 3:18-CR-00273, 2019 WL 3531935, at *4 (M.D. Tenn. Aug. 2, 2019) (holding, based on *Moore*, that the defendant's arrest for misdemeanor criminal trespass, although unlawful under Tennessee's cite and release statute, was supported by probable cause and therefore did not violate the Fourth Amendment).[1]

The holding in *Virginia v. Moore* is applicable and binding here. An arrest, even a custodial arrest, based on probable cause to believe a misdemeanor had been committed in the police officer's presence does not violate the Fourth Amendment. That is what happened here. Thus, even if, in theory, the plaintiff *should not* have been subjected to a custodial arrest and additional legal process relating to the failure to yield charge under state law, the violation of state law would not render the arrest unconstitutional. Moreover, setting aside his argument regarding the impact of Tennessee's cite and release statute, Hickel does not allege any facts in the Complaint suggesting

---

[1] Thus, the plaintiff's confusing argument that "a valid charge for failure to yield would not preclude a Fourth Amendment claim regarding the resisting arrest charge," where the arresting officer omitted relevant information or included intentionally misleading information in his arrest warrant or at the probable cause hearing, also misses the mark, because the police officer's subjective motivation is irrelevant where the arrest is nonetheless supported by probable cause. *See Hartman v. Thompson*, 931 F.3d 471, 482 (6th Cir. 2019) ("Nor does an officer's subjective motivation invalidate an otherwise lawful arrest based on probable cause." (citing *Arkansas v. Sullivan*, 532 U.S. 769, 771–72 (2001))).

that he suffered a greater deprivation of liberty due to the resisting arrest charge than he would have if he had only been charged with failure to yield.

The court, therefore, will grant the motion to dismiss the false arrest and malicious prosecution claims.

## V.        CONCLUSION

For the reasons set forth herein, the defendant's Motion to Dismiss the plaintiff's Fourth Amendment malicious prosecution, false arrest, and false imprisonment claims will be granted.

An appropriate Order is filed herewith.


ALETA A. TRAUGER
United States District Judge