# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **STEFAN HICKEL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:23-cv-00567** |
| | ) | **Judge Aleta A. Trauger** |
| **KEVIN WESTOVER,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

Before the court is plaintiff Stefan Hickel's Motion to Reconsider Partial Dismissal (Doc. No. 35), asking the court to reconsider its previous dismissal of the plaintiff's claims for false arrest and malicious prosecution (*see* Dec. 4, 2023 Memorandum and Order, Doc. Nos. 27, 28), in light of the Supreme Court's recent decision in *Chiaverini v. City of Napoleon*, 144 S. Ct. 1745 (2024). Defendant Kevin Westover responds that reconsideration is not warranted. (Doc. No. 37.)

*Chiaverini* clearly marks "an intervening change in controlling law," *Am. Civil Liberties Union v. McCreary Cty.*, 607 F.3d 439, 450 (6th Cir. 2010), insofar as it expressly rejected a principal of law previously espoused by the Sixth Circuit on which this court relied in its initial ruling in dismissing the malicious prosecution claim. In light of this sea change, in the Sixth Circuit at least, a fresh look at the validity of the plaintiff's malicious prosecution claim is warranted. As set forth herein, the court will vacate in part the previous Memorandum and Order and will reinstate that claim. The court further finds, however, that *Chiaverini* does not require reconsideration, or dismissal, of the false arrest claim.

## I.    LEGAL STANDARDS

"The Federal Rules of Civil Procedure do not specifically provide for a motion for reconsideration, but district courts have authority to reconsider interlocutory orders under federal common law and Rule 54(b)." *McCormack v. City of Westland*, No. 18-2135, 2019 WL 4757905, at *2 (6th Cir. Apr. 15, 2019) (citing *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004); Fed. R. Civ. P. 54(b)). When "there is an intervening change in controlling law, newly available evidence, or a need to correct a clear error or prevent manifest injustice," reconsideration may be justified. *Id.* (citing *Rodriguez*, 89 F. App'x at 959).

On reconsideration, the standards governing a motion to dismiss under Rule 12(b)(6) still apply. A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1134 (6th Cir. 1996). Such a motion is properly granted if the plaintiff has "fail[ed] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *Marvaso v. Sanchez*, 971 F.3d 599, 605 (6th Cir. 2020). To survive a motion to dismiss, a complaint must allege facts that, if accepted as true, are sufficient to state a claim to relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007); *see also* Fed. R. Civ. P. 8(a)(2). A complaint has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). In reviewing a motion to dismiss, the court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Royal Truck & Trailer Sales & Serv., Inc. v. Kraft*, 974 F.3d 756, 758 (6th Cir. 2020) (quoting *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008)).

## II.     FACTS AND PROCEDURAL HISTORY

Very generally, as relevant here, Hickel alleges that Westover, while on duty as a Clarksville Police Officer, pulled him over on June 30, 2022 for failure to yield to oncoming traffic when making a left turn. (Complaint, Doc. No. 1 ¶ 6.) Ultimately, what should have been a routine traffic stop devolved into a confrontation that resulted in Westover's ordering Hickel out of the car before forcibly pulling him from the car and then slamming him facedown into the driver's seat while pressing a knee into his back. (*Id.* ¶¶ 8–22.) The encounter was video-recorded on Westover's bodycam and dashcam, and the plaintiff filed copies of these videos as (late-filed) exhibits to the Complaint. (Doc. No. 26.)

After pulling Hickel from his car, Westover informed him that he was being arrested and cited for resisting arrest. (Doc. No. 1 ¶ 23.) He placed Hickel in handcuffs (allegedly closing them too tightly), and took Hickel to jail. (*Id.* ¶¶ 24–25.) Westover ultimately pressed charges against Hickel for failure to yield and resisting arrest, despite the alleged absence of probable cause to support the latter claim, and allegedly included false statements in his arrest warrant in order to substantiate the arrest. (*Id.* ¶¶ 27–30.) A Montgomery County General Sessions Court, following a preliminary hearing, found that probable cause existed and bound the case over to the Grand Jury. (Doc. No. 18-2, at 12.) The Grand Jury, however, ultimately returned a "No True Bill." (Doc. No. 1 ¶ 31.)

Hickel brought this lawsuit following the dismissal of the charges against him, asserting claims against Westover under 42 U.S.C. § 1983 for the use of excessive force in effecting the arrest, malicious prosecution and false arrest/false imprisonment.[1] Specifically in support of the

---

[1] The plaintiff actually asserted separate claims for false arrest and false imprisonment, but has conceded that that latter claim is redundant of the former. *See Weser v. Goodson*, 965 F.3d 507, 513 (6th Cir. 2020) ("When a false-imprisonment claim arises out of an alleged false arrest—

latter claims, Hickel asserts that Westover violated his Fourth Amendment rights not to be prosecuted or arrested without probable cause, lied under oath that Hickel had resisted arrest, and, by swearing out an arrest warrant that contained false statements, "helped start a prosecution against [Hickel] without probable cause." (Compl. ¶¶ 41–43.)

In response to the Complaint, Westover filed a Motion to Dismiss (Doc. No. 17) (which was actually a motion for partial dismissal), challenging the malicious prosecution and false arrest claims (but not the excessive force claim). Westover argued in support of this motion that these two claims were barred by the doctrine of collateral estoppel, because the Montgomery County General Sessions Court, at the preliminary hearing, found that probable cause supported both charges. (Doc. No. 19, at 5–10.) He argued, alternatively, that, because the arrest was based in part on the failure to yield (with respect to which the plaintiff did not allege a lack of probable cause), his false arrest claim failed altogether—irrespective of the existence of probable cause for the resisting arrest charge—because "the Supreme Court has held that if an officer has probable cause to arrest a suspect for any crime, there is no Fourth Amendment violation, even if the police officer lacked probable cause to arrest for [another] offense charged." (Doc. No. 19, at 9 (citing *Devenpeck v. Alford*, 543 U.S. 146, 155 (2004)).)

Regarding the malicious prosecution claim, Westover further argued that the plaintiff failed to allege a deprivation of liberty resulting from the prosecution of the resisting arrest charge that is "separate and distinct from any alleged deprivation of liberty that purportedly resulted from his prosecution for the charge of failure to yield," the validity of which, again, the plaintiff did not contest. (*Id.* at 11–12.)

---

as it does in this case—those claims are identical, so we will simply refer to those two claims together as a false-arrest claim.").

In response, the plaintiff argued that his claims were not barred by collateral estoppel, that he adequately alleged a lack of probable cause for the failure to yield charge, as well as for the resisting arrest charge, and, in any event, that a valid charge for failure to yield does not foreclose his Fourth Amendment claims regarding the resisting arrest charge, because he "expressly allege[d] [that] the Defendant intentionally falsified the arrest warrants to cover up his excessive force." (Doc. No. 22, at 7.) In addition, he contends that his malicious prosecution claim should proceed, because he has alleged a deprivation of liberty that he would not have suffered if he had been charged only with failure to yield and not with resisting arrest.

In its original ruling on the Motion to Dismiss, the court found that, for any claim under the Fourth Amendment, the plaintiff must allege a lack of probable cause and that the Complaint in this case did not allege a lack of probable cause for the failure to yield charge. In addition, even if it had, the defendant's bodycam, submitted by the plaintiff as an exhibit to the Complaint, conclusively established the existence of probable cause for the failure to yield charge. (*See* Doc. No. 27, at 7–8.) The court held that, as a result, both the false arrest and malicious prosecution claims in connection with the failure to yield charge—insofar as the Complaint could be construed to assert such claims—were subject to dismissal.

But that still left in question the validity of the false arrest and malicious prosecution claims in connection with the resisting arrest charge. Regarding those claims, the court stated: "because the arrest and prosecution on the failure to yield charge were supported by probable cause, the plaintiff's claims for false arrest and malicious prosecution in connection with the resisting arrest charge also fail, regardless of whether probable cause existed separately for that charge." (Doc. No. 27, at 9 (citing *Howse v. Hodous*, 953 F.3d 402, 408–09 (6th Cir. 2020)).) In *Howse*, the Sixth Circuit had applied what appeared to be a categorical rule: because the defendant had probable

cause to arrest and prosecute the plaintiff for one charge, the plaintiff could not "move forward with *any* of his malicious-prosecution claims." *Howse*, 953 F.3d at 408. Likewise, under *Howse*, "the constitutional tort claim of false arrest fails so long as there's just one valid reason for the arrest." *Id.* at 409. According to the Sixth Circuit,

> [i]f the facts known to the officers support probable cause in any form, then an individual may lawfully be arrested. So it follows that when an officer arrests someone based on multiple charges, it is not relevant whether probable cause existed with respect to each individual charge. What matters is the validity of the arrest (the seizure) and not the validity of every charge (the potential justifications for the seizure).

*Id.* (internal quotation marks and citations omitted). Based on this language in *Howse*, this court reasoned that, because the arrest for failure to yield was supported by probable cause, the contemporaneous arrest for resisting arrest was also valid, irrespective of whether it was *not* supported by probable cause. The court granted the motion to dismiss the false arrest and malicious prosecution claims in their entirety.

The plaintiff has now filed his Motion to Reconsider premised upon *Chiaverini*. In that case, the Supreme Court, reversing a decision by the Sixth Circuit that had relied on *Howse*, held that, "when an official brings multiple charges, only one of which lacks probable cause," the "valid charges do not create a create a categorical bar" that "insulate[s] the official from a Fourth Amendment malicious-prosecution claim relating to the invalid charge." *Chiaverini*, 144 S. Ct. at 1748. The plaintiff argues that this court's dismissal of his malicious prosecution claim in reliance on *Howse* must be reconsidered in light of *Chiaverini*. He also argues, based on a part of the *Howse* opinion that was not overruled by *Chiaverini*, that, because "there's no principled reason for treating a Fourth Amendment malicious-prosecution claim differently than a Fourth Amendment false-arrest claim," both claims should be revived in light of *Chiaverini*. (Doc. No. 35, at 2 (quoting *Howse*, 953 F.3d at 409).) In his Response (Doc. No. 37), Westover reprises the collateral estoppel

and causation arguments he asserted in support of the Motion to Dismiss—arguments the court did not reach, having concluded that dismissal of the claims was required under *Howse*. He also contends that *Chiaverini* cannot serve to "revive" Hickel's false arrest claim, because it only addressed a malicious prosecution claim. The plaintiff argues in his Reply that he is entitled to reinstatement of both claims. (Doc. No. 38.)

## III.   DISCUSSION

### A.   The Malicious Prosecution Claim

#### 1.   *Legal Standards*

The Sixth Circuit has acknowledged that the "malicious-prosecution label" is an "unfortunate and confusing misnomer," insofar as a malicious prosecution claim, in fact, bars "certain kinds of seizures, not prosecutions" and establishes an "objective unreasonableness test, not a subjective maliciousness test." *Lester v. Roberts*, 986 F.3d 599, 606–07 (6th Cir. 2021). "As a matter of substance, the Fourth Amendment prohibits only those pretrial seizures (or prosecutions) that lack probable cause . . . . As a matter of procedure, the Fourth Amendment prohibits extended pretrial detentions unless a neutral decisionmaker finds that probable cause exists . . . ." *Id.* at 607.

Generally, to succeed on a malicious prosecution claim, the plaintiff must show that

(1) a criminal prosecution was initiated against her and [the defendant] made, influenced, or participated in the prosecution decision; (2) there was no probable cause to support the charges; (3) as a result of the legal proceedings, [the plaintiff] suffered a deprivation of liberty "apart from the initial seizure"; and (4) the criminal proceedings ended in [the plaintiff's] favor.

*Miller v. Maddox*, 866 F.3d 386, 389 (6th Cir. 2017) (quoting *Sykes v. Anderson*, 625 F.3d 294, 308–09 (6th Cir. 2010)).

In *Chiaverini*, the Supreme Court granted certiorari to resolve a circuit split as to whether a malicious prosecution claim can proceed when a plaintiff is charged with both valid and invalid charges at the same time. Where other courts of appeals had "held that the presence of probable cause for one charge does not automatically defeat a Fourth Amendment malicious-prosecution claim alleging the absence of probable cause for another charge," the Sixth Circuit had "stepped out on its own." *Chiaverini*, 144 S. Ct. at 1750. The Sixth Circuit had instead held that, "'[s]o long as probable cause supports at least one charge against [the defendant] . . . ,' then his malicious-prosecution claim 'based on other charges . . . also fail[s].'" *Id.* at 1749 (quoting *Chiaverini v. City of Napoleon*, No. 21-3996, 2023 WL 152477 (6th Cir. Jan. 11, 2023) (citing *Howse*, 953 F.3d at 409–10), *vacated and remanded*, 144 S. Ct. 1745 (2024)). The Supreme Court squarely rejected the Sixth Circuit's holding, concluding instead that, when an "official brings multiple charges, only one of which lacks probable cause," the valid charges do *not* "insulate the official from a Fourth Amendment malicious-prosecution claim relating to the invalid charge." *Id.* at 1748.

The question was not even close, as the police officer defendants abandoned it in the Supreme Court, arguing instead that the Court should focus on the "element of causation." *Id.* at 1751. Regarding this issue, "[t]he parties and amicus curiae offer[ed] three different views of how that causation element is met when a valid charge is also in the picture." *Id.* The plaintiff argued that, "when both valid and invalid charges are brought before a judge for a probable cause determination, the warrant the judge issues is irretrievably tainted; so any detention depending on that warrant is the result of the invalid charge." *Id.* The United States, as *amicus curiae*, argued "for the use of a but-for test to discover whether the invalid charge, apart from the valid ones, caused a detention," in which case "[t]he question . . . would be whether the judge in fact [would] have authorized the detention had the invalid charge not been present." *Id.* at 1751–52 (record

citations omitted). The defendants posited that the test should be "whether the judge, absent the invalid charge, *could* have legally authorized the detention—regardless of what he really *would* have done." *Id.* at 1752 (emphasis in original). The Supreme Court declined to consider the question, as that was not the issue it had agreed to review. It also noted that not many courts *have* addressed this issue or formulated a test. *Id.*

Regardless, given that *Chiaverini* eviscerated that part of *Howse* on which this court relied to dismiss Hickel's malicious prosecution claim, that portion of this court's holding is no longer valid, and the court must consider whether any of the defendant's other arguments in support of dismissal have merit.

### 2. Collateral Estoppel

Westover renews his argument, raised in support of the Motion to Dismiss, that the Montgomery County General Sessions Court's probable cause finding collaterally estops Hickel from contesting probable cause with respect to either charge against him. *See Coogan v. City of Wixom*, 820 F.2d 170, 175 (6th Cir. 1987) ("[W]here the state affords an opportunity for an accused to contest probable cause at a preliminary hearing and the accused does so, a finding of probable cause by the examining magistrate or state judge should foreclose relitigation of that finding in a subsequent § 1983 action."), *overruled on other grounds by Frantz v. Vill. of Bradford*, 245 F.3d 869, 874 (6th Cir. 2001).

However, "a prior probable cause finding does not prevent a plaintiff from relitigating probable cause where the plaintiff claims that the witness who testified at the state proceeding misstated or knowingly misrepresented the facts used to establish probable cause." *Harcz v. Boucher*, 763 F. App'x 536, 544 (6th Cir. 2019) (citing *Darrah v. City of Oak Park*, 255 F.3d 301, 311 (6th Cir. 2001)). Hickel has done exactly that, alleging that the arrest warrant contains "complete fabrication[s]," outright "lie[s]," and "bogus" allegations in support of the resisting

arrest charge, including that Hickel "continued to . . . shake his leg profusely" during the encounter and "lunged to the passenger side of the vehicle" when Westover opened the car door. (Doc. No. 1 ¶¶ 29–31.) Westover made similar allegations in the context of the preliminary hearing. (Doc. No. 18-2, at 4–5.) The court, moreover, has reviewed the video of the arrest submitted as an exhibit to the Complaint and finds that it does not conclusively establish probable cause or refute the plaintiff's assertions that Westover fabricated facts to support the false arrest charge.

The plaintiff's malicious prosecution claim is not barred by collateral estoppel.

### 3. Causation/Deprivation of a Liberty Interest

To establish the third element of a malicious prosecution claim, the plaintiff must plausibly allege that he suffered some deprivation of liberty "apart from the initial seizure." *Miller*, 866 F.3d at 389. With respect to this third element, district courts have found a deprivation sufficient to satisfy this element where, for example, the plaintiff was arrested, taken to jail, and arraigned, or arrested, booked, and released upon bond after a pretrial hearing. *Phat's Bar & Grill v. Louisville Jefferson Cty. Metro Gov't*, 918 F. Supp. 2d 654, 663 (W.D. Ky. 2013) (citations omitted). The Sixth Circuit has provided some additional guidance. In *Wright v. City of Euclid*, 962 F.3d 852 (6th Cir. 2020), the court reiterated that "service with a summons to appear at trial or some other court proceeding does not rise to the level of a constitutional deprivation." *Id.* at 877 (citing *Noonan v. Cty. of Oakland*, 683 F. App'x 455, 462 (6th Cir. 2017)). In that case, however, the plaintiff adequately alleged facts to support a malicious prosecution claim, where he was "confined in the jail and in the hospital for many hours after the initial seizure but before being released." *Id.*

Likewise, in *Miller v. Maddox*, 866 F.3d 386 (6th Cir. 2017), the court found that the facts in that case—that the plaintiff was "required to pay $35 to be accepted into the pretrial program, could have been required to post a $3,000 bond, was required to attend court appearances, and required to check in with a case manager once per week"—"involve[d] precisely the factors that

were missing in *Noonan* and that [the court had elsewhere] suggested could constitute a deprivation of liberty apart from the initial seizure." *Id.* at 393. The court further noted that, "[t]o the extent that [the plaintiff] was detained for any amount of time after being accepted into the pretrial release program, that portion of her detention prolonged the seizure beyond the point necessary to carry out the seizure's purpose." *Id.* at 394.

In addition, when an allegedly invalid charge is brought alongside a valid charge, the plaintiff must show that he suffered a deprivation of liberty distinct in some respect from the deprivation of liberty associated with the valid charge. The Supreme Court has not weighed in on what causation standard applies in this context, *see Chiaverini*, 144 S. Ct. at 1751–52, and this court has not located any relevant Sixth Circuit precedent. Courts in this district have held generally that a litigant must show that he suffered some loss of liberty that he would not have suffered solely from the charge that was supported by probable cause. *See, e.g.*, *Staten v. City of Dickson*, No. 3:16-cv-00771, 2017 WL 4232677, at *4 (M.D. Tenn. Sept. 25, 2017) (Crenshaw, J.) ("[B]ecause Moore had probable cause to arrest Plaintiffs on the false imprisonment charges, Plaintiffs must show that the prosecution of the extortion charges caused a loss of liberty that they would not have suffered solely from the false imprisonment charges. They do not make this showing. For example, they do not provide proof that they remained in jail any longer, had additional conditions placed on their release from jail, were required to attend additional court dates, or any other facts that would show that they 'suffered a deprivation of liberty' as a 'consequence of the legal proceedings' on the extortion charge." (quoting *Sykes*, 625 F.3d at 308)); *see also Freeman v. Troutt*, No. 3:10-cv-0697, 2012 WL 5439160, at *9–10 (M.D. Tenn. Nov. 7, 2012) (Trauger, J.) (finding that the defendant was already incarcerated when an additional aggravated assault charge was brought against him, and the plaintiff's failure to allege that the

aggravated assault charge further affected his liberty in any way defeated the malicious prosecution claim).

Westover argues that the plaintiff's Motion to Reconsider overlooks the fact that the court already determined, in the original ruling on the Motion to Dismiss, that "Hickel does not allege any facts in the Complaint suggesting that he suffered a greater deprivation of liberty due to the resisting arrest charge than he would have if he had only been charged with failure to yield." (Doc. No. 27, at 11–12.) The plaintiff responds, in a somewhat convoluted argument, that, because the failure to yield charge was indisputably valid, his allegations in the Complaint that he "suffered injury" as a result of malicious prosecution must be construed as relating to the resisting arrest charge and that the Complaint makes it "clear that the sole basis of this injury was the 'resisting arrest' charge." (Doc. No. 38, at 3.) He also points out that he alleges additional facts consistent with this theory. Namely, he claims that his allegations show that, instead of simply writing a traffic citation for failure to yield and moving on, Westover undertook an accusatory and antagonistic interrogation that "escalated into Defendant Westover's subsequent use of force and then issuance of the baseless 'resisting arrest' charge." (*Id.*; *see also* Doc. No. 1 ¶¶ 22–25 (alleging that Westover assaulted him for no reason, informed him that he was being arrested and cited for resisting arrest, even though Hickel had "complied with every order that was given to him," and took him to jail, despite Hickel's not having been "accused of a crime at any point during the stop").)

Upon reconsideration and in light of *Chiaverini*, the court is persuaded that the Complaint states or plausibly infers that, but for the resisting arrest charge, the plaintiff would not have suffered any detention aside from the initial vehicular stop: he would not have undergone a custodial arrest, been taken to jail for booking, or been required to post some kind of bond and

then appear for a preliminary hearing. The facts as alleged are sufficient to show both that he suffered a deprivation of liberty apart from the initial arrest and a deprivation of liberty distinct from what he would have suffered if he had only been charged with failure to yield. The court finds it unnecessary in the context of a motion to dismiss to affirmatively resolve the applicable causation standard, absent further briefing and development of that issue by the parties.

The Complaint adequately alleges a deprivation of liberty, such that dismissal of the claim is not warranted.

### B. The False Arrest Claim

The plaintiff acknowledges that *Chiaverini* only addressed malicious prosecution claims, but he contends that the holding should extend to his false arrest claim as well, arguing based on a portion of *Howse* that was not overruled by *Chiaverini* that there is "no principled reason for treating a Fourth Amendment malicious-prosecution claim differently than a Fourth Amendment false-arrest claim." (Doc. No. 35, at 2 (quoting *Howse*, 953 F.3d at 409).) The defendant, conversely, argues that there is no basis for extending *Chiaverini* beyond the realm of malicious prosecution claims and that malicious prosecution and false arrest claims are distinct causes of action. (Doc. No. 37, at 8–9.)

Very generally, all a plaintiff is required to prove for a false arrest claim under federal law is that "the arresting officer lacked probable cause to arrest the plaintiff." *Weser v. Goodson*, 965 F.3d 507, 513 (6th Cir. 2020) (quoting *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005)). The Sixth Circuit is not alone in holding that "the constitutional tort claim of false arrest fails so long as there's just one valid reason for the arrest." *Howse v. Hodous*, 953 F.3d 402, 409 (6th Cir. 2020) (citing *Devenpeck v. Alford*, 543 U.S. 146, 153–55 (2004)). Even before *Chiaverini*, many courts had held that, while "probable cause to believe an individual committed one crime . . . does not foreclose a malicious prosecution claim for additionally prosecuting the

individual on a separate charge," malicious prosecution claims are treated differently from false

arrest claims in that respect. *Holmes v. Vill. of Hoffman Est.*, 511 F.3d 673, 682 (7th Cir. 2007)

(citing *Johnson v. Knorr*, 477 F.3d 75, 83–85 (3d Cir. 2007); *Uboh v. Reno*, 141 F.3d 1000, 1005

(11th Cir. 1998); *Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991)).[2]

As the Seventh Circuit explained:

> [W]hereas probable cause to believe that a person has committed any crime will
> preclude a false arrest claim, even if the person was arrested on additional or
> different charges for which there was no probable cause, probable cause as to one
> charge will not bar a malicious prosecution claim based on a second, distinct charge
> as to which probable cause was lacking. Logic supports the distinction. An arrested
> individual is no more seized when he is arrested on three grounds rather than one;
> and so long as there is a reasonable basis for the arrest, the seizure is justified on
> that basis even if any other ground cited for the arrest was flawed. But when it
> comes to prosecution, the number and nature of the charges matters: the accused
> must investigate and prepare a defense to each charge, and as the list of charges
> lengthens (along with the sentence to which the accused is exposed), the cost and
> psychic toll of the prosecution on the accused increase.

*Holmes*, 511 F.3d at 682–83 (citing, primarily, *Devenpeck*, 543 U.S. at 153–55; other internal

citations omitted).[3]

Based on overwhelming authority both within and outside the Sixth Circuit, the fact that

there apparently is no circuit split on this issue, and the fact that *Chiaverini* addressed only the

validity of the Sixth Circuit's "categorical bar" on malicious prosecution claims when at least one

of the charged claims is supported by probable cause, the court finds that, because the plaintiff's

---

[2] Notably, these are the same Courts of Appeals (and two of the same cases) the Supreme Court acknowledged as having created the circuit split that prompted the ruling in *Chiaverini*. *See Chiaverini*, 144 S. Ct. at 1750.

[3] *Devenpeck* resolved a circuit split as to whether an arrest may be lawful (if supported by probable cause), even if none of the crimes identified by the arresting officer at the time of arrest is supported by probable cause. Even at the time *Devenpeck* was issued, there was already an "apparent consensus among the courts of appeals . . . that an arrest is lawful if one charged crime on which a suspect is arrested is supported by probable cause, even if other charged crimes are not supported by probable cause." *Jaegly v. Couch*, 439 F.3d 149, 154 n.1 (2d Cir. 2006).

arrest for failure to yield was supported by probable cause, that claim is subject to dismissal for failure to state a claim, irrespective of whether the resisting arrest charge was also supported by probable cause. *Chiaverini* does not suggest otherwise, and reconsideration of the dismissal of this claim is not warranted.

## IV.  CONCLUSION

For the reasons set forth herein, the court will grant in part the Motion to Reconsider and vacate that part of its prior Memorandum and Order dismissing the plaintiff's malicious prosecution claim. The court finds no basis, however, for reviving the false arrest claim under *Chiaverini*. An appropriate Order is filed herewith.

ALETA A. TRAUGER
United States District Judge